835 P.2d 1326

STATE of Idaho, Plaintiff–Respondent,

v.

Charles Richard RUSSELL,
Defendant–Appellant.

No. 18627.

Court of Appeals of Idaho.

June 5, 1991.

Wood & Shaw, Pocatello, for defendant-appellant. Steven G. Wood argued.

Jim Jones, Atty. Gen., Michael Kane, Deputy Atty. Gen., and Jack B. Haycock, Deputy Attys. Gen., Boise, for plaintiff-respondent. Jack B. Haycock argued.

SILAK, Judge.

This case involves the question whether a trial court abused its discretion in revoking a defendant's probation and in amending his sentence. The court revoked defendant Russell's probation because Russell violated a condition prohibiting him from contacting his estranged wife. On appeal, Russell challenges the probation revocation and the court's denial of his I.C.R. 35 motion to reinstate probation. Russell also claims that he should not have been required to pay restitution and that certain evidence was improperly admitted during the initial sentencing hearing. We reverse the order revoking probation and remand this case to give the district court the opportunity to correct the illegal sentence.

In June, 1988, Charles Russell pled guilty to two counts of obliterating the vehicle identification numbers on snowmobiles. The district court sentenced Russell to two concurrent five-year terms of imprisonment under the Unified Sentencing Act, each with two years fixed, followed by an indeterminate term of three years. After paying restitution to the victims of his crimes, Russell was placed on probation. Russell's probation was revoked in August, 1989, as the result of multiple violations of his probation agreement. At that time the court determined that the crimes had occurred before the effective date of the Unified Sentencing Act (February 1, 1987), and amended the sentences to impose one fixed term of three years to be followed consecutively by an indeterminate term of three years.

After revoking probation, the district court retained jurisdiction and placed Russell on a 120–day rider in the Bannock County jail. In February, 1990, the court suspended the previously imposed sentences and again placed Russell on probation. At the probation hearing on February 26, 1990, the court orally pronounced the conditions of probation. One of the conditions was that Russell would "not contact his wife in any fashion." However, the court did agree to allow Russell to go to their house[1] to pick up some of his personal belongings if he was accompanied by a responsible adult.

Before the probation hearing was concluded, the prosecutor requested that Russell be signed up for probation before being released from jail. Russell's attorney requested Russell be allowed to go back to the attorney's office to review and discuss a settlement recommendation in his divorce trial which was to continue the next morning. The court agreed to allow this if Russell promised not to leave his attorney's office until he had talked to one of the probation officers. After the probation hearing concluded, Russell left with his attorney. They discussed the divorce matter and attempted to contact Mrs. Russell's attorney. When they were unable to reach him, they contacted the department of probation and parole and requested permission to go to the Russells' home and pick up Russell's belongings. It is unclear whether this permission was granted; however, Russell did not sign his probation papers that afternoon. It is also unclear whether Russell ever received a written order setting forth the terms and conditions of his probation. The court did not file the order of probation until March 8, 1990[2], well after the alleged violation occurred.

Russell and his attorney went to the Russell residence where they got his clothes,

1. The house where Mrs. Russell was living had been the community home. Russell and his wife were in the process of obtaining a divorce at the time these events occurred; however, it is not clear from the record in this criminal matter whether Russell still had an ownership interest in the house.

2. The record indicates that the Order suspending Russell's sentence and placing him on probation was signed by the district court on February 26, 1990, the day of the probation hearing; however, the order was not filed until March 8, 1990.

an old truck, and some personal items. Mrs. Russell's attorney met them at the house and expressed his extreme displeasure. Mrs. Russell was not there. Two days later, Russell asked his stepfather, with whom he was staying at that time, to contact his wife and request copies of tax returns, receipts, insurance papers, and other documents. Russell testified at his probation revocation hearing that he did not believe this would be a violation of his probation terms because he did not contact his wife directly and because he had contacted his wife in this manner on several previous occasions.

■ The first issue we discuss on appeal is whether the trial court erred in revoking Russell's probation. As a preliminary matter, we consider our standard for review. The decision whether to revoke a defendant's probation lies within the sound discretion of the trial court. I.C. § 20–222; *State v. Corder,* 115 Idaho 1137, 1138, 772 P.2d 1231, 1232 (Ct.App.1989). Thus, we must determine whether the trial court abused its discretion in revoking Russell's probation.

■ Russell's first argument is that he was not on probation at the time the alleged violation occurred because he had not yet received a written order containing the terms and conditions of the probation. In support of this proposition, Russell cites *Ex parte Medley,* 73 Idaho 474, 253 P.2d 794 (1953), an original proceeding in the Supreme Court for issuance of a writ of habeas corpus. In *Medley,* the petitioner claimed that his probation revocation proceeding was a nullity because the trial court had failed to incorporate the terms and conditions of probation into the written order granting probation. The trial court had informed the petitioner orally of "at least one condition of the order." *Medley* at 481, 253 P.2d at 798. Having examined the record on appeal, our Supreme Court concluded:

> Since it is clear that [the petitioner] was informed of [the probation] conditions and the course of conduct expected of him in this respect, accepted such clemency, and acted thereunder, the failure to

include such condition in the order did not operate in anywise to the injury or prejudice of petitioner. The failure to so include the conditions and terms of the order is condemned. There are instances where such practice would be fatal. Here it is obviously irregular and erroneous but for the reasons above set forth does not operate to nullify the order under the facts disclosed by the record.

*Medley* at 481, 253 P.2d at 798. The holding in *Medley* indicates that notice of the probation conditions is the necessary precedent to the commencement of a valid probationary period, and that, in certain cases, oral notification of the terms and conditions of probation will be adequate to trigger the commencement of the probationary period.

The issue of notice arose in another case involving a probation revocation, *State v. Hancock,* 111 Idaho 835, 727 P.2d 1263 (Ct.App.1986). In *Hancock,* the appellant was serving eleven months in jail before starting probation. At the sentencing hearing, the trial court had sentenced *Hancock* to two concurrent ten-year terms of imprisonment; the court told *Hancock* that he would serve eleven months in jail and would be on probation for the remainder of the ten years. While he was still in jail, the state filed a criminal complaint charging him with possession of a dangerous weapon. Because *Hancock* pled guilty to the charge of possession of a dangerous weapon by an inmate, the trial court revoked his probation while he was still in jail. On appeal, *Hancock* argued that prior to the time he was alleged to have violated his probation, he was never informed, orally or in writing, that he was on probation and was never informed of any of the conditions of that probation. This Court reviewed the record and concluded that the trial court must have believed it was unnecessary and premature to state specific conditions of probation until *Hancock* was released from jail. We also concluded that the trial court's remarks reflected its intention to have the probation commence after the jail term had been served. For these reasons, we held that *Hancock* was not on probation at the time the alleged violation

took place and that the alleged violation could not be the basis for revoking *Hancock*'s probation.

Our present case is distinguishable from the *Hancock* case because the trial court stated specific conditions of probation in open court. Thus, Russell had notice of the conditions even though he had not yet received a written order setting out those conditions. The present case is also distinguishable from *Medley* because, in that case, the trial court failed to state the terms and conditions of probation in the written order. Here, Russell allegedly violated the terms and conditions of probation before the court had a chance to file the written order. Nevertheless, the trial court stated specific terms and conditions and explained them in open court. Because Russell had full knowledge of the terms and conditions of his probation, we conclude that his probationary period began at the time the court announced the terms of probation in open court.

■ Having concluded that Russell was in fact on probation at the time the alleged probation violation occurred, we turn to the question whether the term of his probation which he violated was valid. The trial court revoked Russell's probation because he contacted his wife in violation of one of the conditions of probation placed upon him by the trial court. On appeal, Russell argues that this condition was both unduly restrictive and ambiguous.[3] We agree that the condition was unduly restrictive.

■ Idaho Code § 19–2601 gives the trial court discretion to suspend a defendant's sentence and place the defendant on probation "under such terms and conditions as it deems necessary and expedient,.... " I.C. § 19–2601(4). The statute does not provide the trial court with authority to impose arbitrary or unreasonable conditions. The purpose of probation is to give the defendant an opportunity to be rehabilitated under proper control and supervision. Thus, a condition of probation must be reasonably related to the purpose of probation, which is rehabilitation. *State v. Sandoval,* 92 Idaho 853, 860–861, 452 P.2d 350, 357–358 (1969) (where the petitioner's original conviction resulted from a crime involving the operation of a motor vehicle, probation condition prohibiting the use of a motor vehicle was reasonable and not an abuse of discretion); *see also State v. Oyler,* 92 Idaho 43, 45–46, 436 P.2d 709, 711–712 (1968) (where trial court imposed a probation condition requiring abstention from use of alcoholic beverages on defendant who was an alcoholic, and such condition was impossible to fulfill; case was remanded to trial court to determine if such condition was fundamental to defendant's probation and to determine whether defendant was a fit subject for probation in light of alcohol problem).

■ The trial court has broad discretion in tailoring the terms and conditions of probation. Acceptable terms and conditions include, among other things, "that the probationer avoid persons or places of disreputable or harmful character, make reparation or restitution to the aggrieved party for the damage or loss caused by [the] offense, reimburse the government for defense costs, and consent to searches." 21 Am.Jur.2d *Criminal Law* § 570, pp. 932 (1981). These types of reasonable conditions will be upheld. The court may even restrict constitutional rights if the restriction bears a reasonable relation to the defendant's criminal activity; however the court may not impose conditions which are vindictive, vague or overbroad.[4] *See id.*

---

3. We note that Russell did not object to the conditions of his probation at the hearing during which he was placed on probation on February 26, 1990; perhaps he did not object to the condition because he did not understand it. If he did not understand the condition it may be impossible for him to fulfill it. Where it is impossible for a probationer to perform a condition of his probation, he may object to it for the first time at the hearing on the motion to revoke his probation. *State v. Oyler,* 92 Idaho 43, 436 P.2d 709 (1968).

4. The following are examples of probation conditions which courts have held to be invalid: for a court knowingly to impose a condition of total abstention on an alcoholic would be patently vindictive, *State v. Oyler,* 92 Idaho 43, 436 P.2d 709 (1968); probation conditions prohibiting de-

In the present case, the court imposed a probation condition requiring that Russell would "not contact [his] wife in any fashion." Russell's conviction was for altering the vehicle identification numbers on snowmobiles. There is no evidence that Russell's contact with his wife bore even a tangential relationship to his criminal activity. Communicating with a spouse is not itself a criminal activity. Thus, the probation condition prohibiting Russell from contacting his wife was unreasonable. Probation may not be revoked on the single ground that there was a violation of an improper provision of probation. For this reason, it was an abuse of discretion to revoke Russell's probation on the basis that he had a third party contact his wife. Because we have found the condition unduly restrictive, we do not reach the issue of whether it was ambiguous.

■ We turn next to the question whether the trial court erred in sentencing Russell. When Russell was first sentenced, the district court was under the belief that the Unified Sentencing Act applied to both counts of obliterating the vehicle identification numbers on snowmobiles. The court imposed two concurrent sentences with fixed and indeterminate portions. Later, the court noted that the criminal information alleged that the crimes had occurred in 1986, before the effective date of the Unified Sentencing Act. The court then resentenced Russell under the prior law. On appeal, Russell has indicated for the first time that the information was amended to allege the date of the second offense to be March 3, 1987. Because of this, the Unified Sentencing Act applies to this count.

In *State v. Martin,* 119 Idaho 577, 808 P.2d 1322 (1991), our Supreme Court ruled that an Idaho appellate court cannot consider the alleged failure of a sentence strictly to comply with statutory requirements where the trial court was not given an opportunity to consider the issue; thus, the sentence would not be corrected at the appellate level. Under I.C.R. 35, the trial court may correct an illegal sentence at any time. Russell may challenge the legality of his sentence in the trial court under I.C.R. 35 and appeal from the trial court's ruling if necessary. The three-year indeterminate sentence which the district court imposed for the second offense does not comply with the Unified Sentencing Act. Thus, under an appropriately filed Rule 35 motion, the trial court should resentence Russell and impose a sentence which complies with the Act.

Russell has also alleged that in resentencing him, the district court increased his sentence on Count II to a consecutive, indeterminate term of three years, from the previous sentence of two years fixed, with three years indeterminate, to run concurrently with the sentence on Count I. Likewise in light of *Martin, supra,* we decline to remand for correction of this possible defect. If a Rule 35 motion is filed with the district court to correct the sentences, the district court should examine the legality of this alleged sentence increase in light of *State v. Mendenhall,* 106 Idaho 388, 395–396, 679 P.2d 665, 672–673 (Ct.App. 1984).

■ Russell has also alleged that the trial court erred in denying his Rule 35

fendant, who had pled guilty to charge of aggravated child abuse, from marrying or becoming pregnant held invalid, though condition prohibiting defendant from having custody of children was proper because it had reasonable relationship to the crime of child abuse, *Rodriguez v. State,* 378 So.2d 7 (Fla.Dist.Ct.App.1979); probation condition prohibiting defendant from living with a member of the opposite sex unless married was overbroad, and on remand would be modified to permit defendant to live with female relatives, *Mays v. State,* 349 So.2d 792 (Fla.Dist.Ct.App.1979); probation condition prohibiting defendant from drawing unemployment compensation was an unnecessary restric-

tion on a valuable right, *Bownes v. State,* 345 So.2d 787 (Fla.Dist.Ct.App.1977); probation condition prohibiting three defendants, who had been convicted of crimes of forgery and burglary, from having sexual intercourse with persons other than their spouses, was invalid because it was not reasonably related to curtailing the defendants' inclinations to steal, *Wiggins v. State,* 386 So.2d 46 (Fla.Dist.Ct.App.1980); probation condition requiring defendant to submit himself to course advocating adoption of religion or of a particular religion impermissibly transgresses the First Amendment, *Owens v. Kelley,* 681 F.2d 1362 (11th Cir.1982).

**520**

motion challenging the probation revocation. I.C.R. 35 permits the filing of such a motion "upon revocation of probation." The trial court revoked Russell's probation on March 2, 1990. Russell did not file his Rule 35 motion until March 9, 1990. The motion was untimely, and absent any special circumstances or any misleading conduct on the part of the government which could explain the delay, the trial court has no jurisdiction to entertain the motion. *See State v. Corder*, 115 Idaho 1137, 772 P.2d 1231 (Cr.App.1989). Thus, the trial court did not err in denying the motion.

■ Finally, we note that Russell claims he was improperly ordered to pay restitution, prosecution costs, and money to the Idaho State Police. He also claims that various evidentiary errors were made at the sentencing hearings in September and December, 1988. Although an earlier, timely appeal was filed regarding some of these issues, it was dismissed. The current notice of appeal is not timely as to any of these issues; thus, we will not consider them on this appeal.

For the reasons stated above, we reverse the order revoking Russell's probation and remand this case to the district court for further proceedings.

WALTERS, C.J., and SWANSTROM, J., concur.